### West Philadelphia Bank *v.* Dickson.

Money paid to his creditors, by a person who they have reasonable cause to believe is insolvent, or obtained by them on an attachment issued against his property, within four months next preceding the commencement of the bankruptcy proceedings, may be recovered by his assignee in bankruptcy.

Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

The facts are stated in the opinion of the court.

*Mr. Charles W. Hornor* for the plaintiff in error.
*Mr. Samuel Dickson, contra.*

Mr. Justice Hunt delivered the opinion of the court.

In the present action, the assignees in bankruptcy of Tryon Reakirt seek to recover from the West Philadelphia Bank two different sums of money. The first is a sum of $5,000 paid by Reakirt on the sixth day of February, 1871; the second is the sum of $4,559.76 collected by B. K. Jamieson on behalf of and for the benefit of the bank, through certain attachment

proceedings in the courts of the State of New Yo. k.    The case was tried before a jury in the Circuit Court of the United States, and a verdict and judgment rendered in favor of the assignees for the amount demanded.

The sum first mentioned is claimed to belong to the assignees, on the ground that it was the payment of a debt, or the transfer of money or goods, with a view to give a fraudulent preference by an insolvent, and where the party receiving the money had reasonable cause to believe that the party paying the money was insolvent.   The provisions of the thirty-fifth section of the Bankrupt Act control this branch of the case.    There is no doubt expressed by any party as to the insolvency of Reakirt, the debtor.   His career as a speculator had terminated in forgery.   His forgeries had been discovered, his money was gone, and his trust in his rich relatives unavailing.   The agent and director of the bank heard of the forgery, and was the first upon his track, demanding security or payment, and refused to give him even a part of a day to apply to his relatives for aid, but insisted upon an immediate transfer of his funds in bank. With the greatest pressure, only one-half of the debt could be obtained.   Upon general principles, the case seems to fall clearly within the provisions of the act.

The knowledge of the agent was that of the principal, and there was not only reasonable cause to believe, but clear knowledge of, the insolvency of Reakirt.

The remaining sum falls under the fourteenth section of the Bankrupt Act, which is as follows, viz.: " As soon as the assignee is appointed and qualified, the judge, or, where there is no opposing interest, the register, shall, by an instrument under his hand, assign and convey to the assignees all the estate, real and personal, of the bankrupt, with all his deeds, books, and papers relating thereto ; and such assignment shall relate back to the commencement of the proceedings in bankruptcy, and by operation of law shall vest the title to all such property and estate, both real and personal, in the assignee, although the same is then attached on mesne process, as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of the bankruptcy proceedings."

After obtaining from the bankrupt his funds in Philadelphia, the agent of the bank, Mr. Jamieson, who was also one of its directors, went to New York, and there commenced an action in his own name, but for the benefit of the bank, against the bankrupt, and obtained an attachment against Randolph & Co., and Evans, Wharton, & Co., bankers, with whom Reakirt, the bankrupt, had a credit of about $11,000. He obtained a judgment against Reakirt for $5,176.82, and issued an execution, which was paid through the means of the attachment referred to. The statute declares this attachment, if made within four months preceding the commencement of the bankruptcy proceedings, as was this one, to be dissolved by the assignment in bankruptcy. It is avoided and made of no effect, and the proceedings under it are held for naught. The money obtained by color of it is money held for the assignee, and is recoverable by him.

But it is contended on behalf of the bank that the money thus obtained in each instance was the money of the bank, that it was a case of the reclamation of its own property. If the $5,000 obtained in Philadelphia on checks had been the identical money received from the bank, or the fruits of that money, or if in any manner the money could be traced or separated, this question might be raised. But, in fact, the debt had accrued to the bank, and the money had been received from it nearly two months before the occurrences of Feb. 6. This money had been deposited in various banks, mixed with the other funds of Reakirt, and all used by him at his convenience. There is not a pretence that the money obtained on the checks was the result of the particular transactions with the Philadelphia bank. Reakirt was a druggist, a manufacturer, a stock speculator, and, as has occurred in other like cases, a forger. In the last capacity he had realized the sum of $100,000. There is no evidence where this particular money came from, and certainly no presumption exists that it came from the West Philadelphia Bank. The money obtained upon the New York attachment was a part of a balance of $11,000 standing to Reakirt's credit, with no evidence of the source whence any part of it was derived. There is literally no evidence on which to base the theory of reclamation.

Much is said in argument on the subject of the rescission of the contract. The contract of loan was upon the note or notes of Reakirt, and in form was that of an ordinary loan of money. He gave forged securities as collateral. Whether this justified a rescission on the part of the bank of the entire contract, or whether the bank did rescind, we do not consider of any importance. If it could have identified and followed its money, this question might have become practical. But, as there is an entire failure of proof in that respect, the question does not arise.                *Judgment affirmed.*